UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

TIMOTHY REED,

    Plaintiff,

v.                                            CIVIL ACTION NO. 5:20-cv-00719

MARFORK COAL COMPANY, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Marfork Coal Company, LLC's Motion to Dismiss [Doc. 5], filed November 17, 2020. The matter is ready for adjudication.

**I.**

This case arises out of an alleged workplace injury Plaintiff Timothy Reed suffered while employed by Defendant Marfork Coal Company, LLC ("Marfork"). Mr. Reed worked as an out-by laborer[1] at Marfork's Allen Powellton Site on November 8, 2018, the date of his injury. Mr. Reed was using a 930G Caterpillar Front End Loader ("Loader") to move materials at the mine's surface. While doing so, another miner asked to use the Loader. The mine typically had two Loaders in operation, but one had been out of service for several weeks. Mr. Reed agreed and began walking the site, collecting debris and other trash.

---

[1] Out-by laborers "move materials around the surface yard area of the underground mine site and . . . maintain a clean work area." [Doc. 1-1 at 8 (first verified statement)].

Shortly thereafter, Marfork's mine superintendent directed Mr. Reed to manually move three scrap differential assemblies, each weighing 110–120 pounds, approximately 100 feet to an oil containment area. Mr. Reed informed the superintendent that the differentials were customarily moved using a Loader due to their weight and size. The superintendent nevertheless directed Mr. Reed to move the differentials manually, without the Loader's aid. Mr. Reed began lifting each differential from ground-level to waist height and walking each to the oil containment area. He moved two differentials without incident. While lifting the third, however, Mr. Reed felt a sharp pain in his back and suffered a "severe and permanent back injury." [Doc. 1].

Mr. Reed originally instituted this action in the Circuit Court of Raleigh County on September 9, 2020. The Complaint's sole count alleges a deliberate intent claim under West Virginia Code § 23-4-2. Marfork removed on October 30, 2020, based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332. On November 17, 2020, Marfork moved to dismiss, asserting that Mr. Reed had not plead sufficient facts to allege a violation of each statutory element. Mr. Reed responded on December 8, 2020. He asserts he has alleged violations of all required elements. Marfork replied on December 29, 2020.

## II.

**A.    Governing Standard**

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" must provide "'fair notice of what the . . . claim

2

is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562–63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. N. Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (cleaned up). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly* 550 U.S. at 570.

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

**B.     West Virginia's Deliberate Intent Statute**

West Virginia's deliberate intent statute governs the substantive claim. Employers are generally immune from suit brought by their employees arising from workplace injuries. *See* W. Va. Code § 23-2-6. Injured employees must ordinarily seek recompense through the West Virginia Workers' Compensation Act. *State ex rel Frazier v. Hrko*, 203 W. Va. 652, 659, 510 S.E.2d 486, 493 n.11 (1998). Employers forfeit this immunity, however, by acting with a "deliberate intention" to cause the employee's injury. *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 274, 406 S.E.2d 700, 705 (1991).

The West Virginia Legislature has codified the elements of a deliberate intent claim, requiring the employee prove the following:

(i)     That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(ii)    That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition.

(iii)   That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer.

(iv)    That notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(v)     That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(B). Employees attempting to satisfy subsection (iii) by proving the unsafe working condition violated a state or federal safety statute, rule, or regulation must prove the enactment was

> (a) [S]pecifically applicable to the work and working condition involved as contrasted with a statute, rule, [or] regulation . . . generally requiring safe workplaces, equipment or working conditions; [and]
>
> (b) [I]ntended to address the specific hazard(s) presented by the alleged specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(B)(iii)(II)(a)–(b).

The Supreme Court of Appeals of West Virginia has provided guidance for courts seeking to distinguish between a statute, rule, or regulation that is specifically applicable to the working condition involved as opposed to merely expressing a generalized goal of safety. In *McComas v. ACF Industries, LLC*, the West Virginia Court concluded that a statute, rule, or regulation is a proper predicate if it "imposes a specifically identifiable duty upon an employer"--in essence, an affirmative duty--and the statute is "capable of application the specific type of work at issue." 232 W. Va. 19, 25–26, 750 S.E.2d 235, 241–42 (2013) (citing *Ryan v. Clonch Indus., Inc.*, 219 W. Va. 664, 639 S.E.2d 756 (W. Va. 2006) (*superseded by statute on other grounds*, S.B. 744, 77th Leg., Reg. Sess. (W. Va. 2005))).

### III.

Marfork asserts that Mr. Reed's claim should be dismissed inasmuch as he has failed to identify any applicable statute, rule, regulation, or standard that Marfork violated as required by West Virginia Code § 23-4-2(d)(2)(B)(iii). Mr. Reed contends that Marfork violated several regulations promulgated by the Mine Safety and Health Administration ("MSHA") and the Occupational Safety and Health Administration ("OSHA") and also violated multiple industry standards.

Specifically, Mr. Reed has identified two MSHA regulations that satisfy *McComas* and thus subsection (iii). MSHA requires employers such as Marfork to train new and experienced miners in hazard assessment and avoidance. 30 C.F.R. §§ 48.25(b)(8), 48.26(b)(7) (2018). "The [required training] course shall include the recognition and avoidance of hazards present in the mine." *Id.* Mr. Reed has alleged through his expert's verified statement that Marfork violated MSHA by failing to train its mine superintendent regarding hazard assessment. [Doc. 13 at 1–2]. The allegation minimally suffices at this juncture to conclude Marfork failed to train its superintendent in accordance with the MSHA regulation. Further, the cited regulations are specifically applicable to the unsafe working condition. Had Marfork properly trained the superintendent, he would have known that ordering Reed to manually move the differentials presented a strong probability of serious injury. The alleged regulatory violation is thus sufficient to state a plausible claim.

Marfork contends Reed "is trying to switch element (iii) horses midstream" because he asserts a regulatory violation for the first time in his response. [Doc. 15 at 6]. That is not the case. Reed's complaint and verified statement each allege that Marfork violated applicable regulations and industry standards. [*See* Doc. 1-1 at 5, 9–10]. Moreover, Reed's complaint explicitly states the unsafe working condition "was in violation of a State or Federal safety law, rule, or regulation, or of a commonly accepted well known safety standard." [Doc. 1-1 at 6]. Marfork should have known since Reed instituted this action that he intends to satisfy subsection (iii) by proving Marfork violated regulations and industry standards. Marfork's claim is thus not well taken.

## IV.

Based upon the foregoing discussion, the Defendant's Motion to Dismiss is **DENIED**. [Doc. 5].

The Clerk is directed to transmit a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTERED: July 26, 2021

Frank W. Volk
United States District Judge